IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| REGINALD D. DAVIS, | § | |
| PETITIONER, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-CV-395-A |
| | § | |
| NATHANIEL QUARTERMAN, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, INSTITUTIONAL DIVISION, | § | |
| RESPONDENT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

A.    NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254.

B.    PARTIES

Petitioner Reginald D. Davis, TDCJ-ID #1237767, is confined by the Texas Department of Criminal Justice, Institutional Division, in the Eastham Unit, Lovelady, Texas.

Respondent Quarterman is the Director of the Texas Department of Criminal Justice, Institutional Division.

C. PROCEDURAL HISTORY

On May 14, 2004, a jury found Davis guilty of capital murder in Cause No. 0851753D in the 297th District Court, Tarrant County, Texas, for the death of Luis Marquez. (Clerk's R. 72). The prosecution waived the death penalty, and the trial court assessed a punishment of life imprisonment. (Clerk's R. 80; 2 Rep. R. 3; 7 Rep. R. 50). The Texas Court of Appeals affirmed the judgment, and the Texas Court of Criminal Appeals refused Davis's petition for discretionary review. *Davis v. State*, No. 02-04-244-CR (Tex. App.—Fort Worth Aug. 31, 2005, pet. ref'd). *See also Davis v. State*, No. PD-1426-05 (Tex. Crim. App. Feb. 1, 2006).

Davis filed a state application for writ of habeas corpus, which was denied on May 2, 2007 without written order based on the findings of the trial court without a hearing. *Ex parte Davis,* No. WR-67,145-01 (Tex. Crim. App. May 2, 2007). Davis filed his federal petition for writ of habeas corpus on July 5, 2007.

D. ISSUES

Davis asserts the following as grounds for relief:

1. The evidence is legally insufficient;

2. He was entitled to an instruction on the lesser included offense of felony murder; and

3. He was denied the effective assistance of counsel at trial.

E. RULE 5 STATEMENT

Respondent agrees that the petition is timely filed and Petitioner has sufficiently exhausted available state remedies on the issues presented.

F.  LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

The standards codified in 28 U.S.C. § 2254 guide our review of a petition for writ of habeas corpus filed by a state prisoner:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 1519 , 146 L.Ed.2d 389 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. *See* 28 U.S.C. §2254(d)(1)-(2); *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).

Mere disagreement with the state court is not enough. *Montoya*, 226 F.3d at 404. Federal habeas relief is available only when the state court makes both an incorrect and objectively unreasonable application of governing law. *Smith v. Quarterman*, 515 F.3d 392, 399 (5th Cir. 2008). In addition, state court determinations of underlying factual issues are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. §2254(e)(1).

G.  DISCUSSION

   1.   Sufficiency of the Evidence

Davis asserts that the evidence was legally insufficient to support the verdict. The state appellate court provided the following summary of the evidence presented at trial:

> On June 24, 2002, Luis Marquez was shot and killed. Dr. Nizam Peerwani, the medical examiner for Tarrant County, performed the autopsy of Marquez and testified that Marquez died from perforation of the heart due to a gunshot wound to the chest. Dr. Peerwani testified that he found a single gunshot wound on the body, that the bullet entered the body just above the left nipple, and that there was no exit wound. Two T-shirts taken from Marquez were examined by Ronald Fazio, a senior firearms examiner for the City of Fort Worth Police Department crime laboratory. Fazio testified that he found smoke, soot, and unburnt gunshot particles on the clothing. He estimated, based upon his testing, that the approximate distance between the muzzle and the clothing at the time of discharge was no more than twelve inches.
>
> Fort Worth Police Officer Matthew Mapes testified that on June 24, 2002 he was dispatched to 4333 Jana in Fort Worth, Texas. He stated that upon arrival he found a man in the front yard of the residence and that he attempted to wake him because he did not initially see any wounds, but that when paramedics arrived they discovered that he had been shot. He stated that he interviewed three witnesses on the scene-Rita Alexander, Alvin Thompson, and Travis Thompson-that he was able to identify the victim as Marquez, and that he was able to identify Davis as having been present on the scene at the time of the shooting but as having left before police arrived. Police later took a statement from Davis in which he described witnessing two people scuffling or fighting over something, hearing a shot or two, and seeing the person who had been fighting with Marquez leave in a "faded four door blue car."
>
> The record reflects that a few days after the murder, Police received information indicating that Gary Gentry had witnessed the crime but had not come forward because there was an existing warrant for his arrest. Police subsequently arrested Gentry on the outstanding warrant, after which, on July 9, 2002, he gave police a statement regarding his observations on the night of the shooting. In his statement to police, Gentry identified Davis as the person who shot Marquez. Davis was later arrested by police and charged with capital murder.
>
> At trial, Gentry testified that he witnessed Davis attempt to rob and then shoot Marquez. He testified that he was standing in the driveway of a relative's house talking to his cousin and his cousin's fiancé when Davis approached on a bicycle and hid behind a Winnebago parked on the street. He stated that Davis then jumped out

as Marquez walked by, producing a small nickel plated gun, and that Davis demanded that Marquez "un ass" it, i.e., get everything out of his pockets. He stated that Marquez resisted and the two men began to struggle. He indicated that during the struggle Marquez knocked the gun out of Davis's hand, but that Davis came up with the weapon and shot Marquez. Gentry testified that he heard a second shot but that he did not see the second shot fired because he was running away from the shooting.

Gentry testified further that police had not promised him anything for his statement and that he had made "no deal" with the State on his probation revocation in exchange for his statements, but that after his probation was revoked the State had informed the trial judge, prior to sentencing, of his assistance in the arrest of a person charged with capital murder. Gentry also testified that at the time of trial he had two pending charges, one for possession of a controlled substance and one for escape. He testified that in exchange for his guilty plea, and his truthful testimony in this case, the State had agreed that the drug charge would be reduced to a misdemeanor and that the escape charge would be reduced to resisting arrest, also a misdemeanor, and that the sentences for both offenses would be 90 days in jail to run concurrently.

During cross-examination, Davis's trial counsel attempted to impeach Gentry with inconsistencies in his testimony at trial. In addition, Davis attacked Gentry's credibility by implying that at the very least Gentry had a motive to fabricate when he gave his initial statements to police regarding the murder, and by eliciting testimony from Gentry and the interviewing officer, Detective McCaskill, regarding whether Gentry had sought a deal or guarantee on the pending revocation of his probation in exchange for his statements regarding the murder. Davis also attacked Gentry's credibility by implying that Gentry had changed his story in order to obtain favorable treatment from the State on the charges pending against him at the time of trial.

Rita Alexander testified at trial that she was in her home on June 24, 2002 when she heard gunshots. She testified that after hearing the first shot she went to the front door and observed one person "leaning behind a car" and another person on a bicycle. She testified that after shutting her front door she heard three more shots causing her and the others present in the house to go out on the front porch. She testified that she then observed the body of a man in her yard and Davis riding around in a circle on a bicycle with a white towel or T-shirt wrapped around his hand. She testified that Davis told her to tell her husband to call police because "it had been a drive-by," that she saw no automobile, and that Davis left the scene before police arrived. She also testified that Davis returned the next day and told her daughter to tell her and her husband that he was sorry about the man dying in her front yard, but that he would do his best to help police solve the crime.

*Davis*, No. 02-04-244-CR, slip op. at 2-7 (footnotes omitted).

Davis was indicted for and convicted of

> intentionally caus[ing] the death of an individual, Luis Marquez, by shooting him with a firearm, and the said Defendant was then and there in the course of committing or attempting to commit the offense of robbery, of Luis Marquez.

(Clerk's R. 5, 72). Davis does not contest his identity as the shooter or the evidence that he intended to commit robbery, but asserts that the shooting was accidental. He argues that the evidence is legally insufficient to support the determination that he intentionally caused Marquez's death.

Assessing the legal sufficiency of the evidence requires that the court decide whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Citing the Supreme Court's opinion in *Jackson*, the Texas appellate court rejected Davis's challenge to the legal sufficiency of the evidence. *Davis*, No. 02-04-244-CR, slip op. at 8, 12. Davis has not shown that this determination is contrary to or an unreasonable application of clearly established federal law. He argues that the jury should not have found Gentry to be a credible witness, but all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). There is legally sufficient evidence from which a rational trier of fact could find Davis guilty beyond reasonable doubt of the essential elements of the offense of capital murder as alleged in the indictment.

    2.    Lesser Included Offense

In his petition, Davis asserts that the trial court violated due process by failing to include a jury instruction on the lesser included offense of felony murder because there was evidence that the

shooting was not intentional and occurred as he struggled with Marquez. (Pet. at 7). Felony murder in the course of a robbery differs from capital murder in that it does not require proof of an intent to kill. *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App.1999). *Compare* TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2003)(defining felony murder) *with* TEX. PENAL CODE ANN. § 19.03 (defining capital murder).

Respondent asserts that Davis's claim is subject to a procedural bar because the state court denied habeas relief for this claim on the basis that Davis was attempting to re-litigate claims that were presented and rejected on direct appeal. (State Habeas R. 55, 59). Respondent is incorrect. While Texas law does not allow the state habeas court to address claims that have been disposed of on direct appeal, this is not the type of state procedural requirement that forms an independent and adequate state ground to bar federal habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 n. 3, 111 S.Ct. 2590, 2595 n. 3, 115 L.Ed.2d 706 (1991); *Bennett v. Whitley*, 41 F.3d 1581, 1582-83 (5th Cir.1994). Instead, the court must "look through" to the earlier disposition of the claim on direct appeal. *Ylst*, 501 U.S. at 804, 111 S.Ct. at 2595. The state court's denial of habeas relief for error in the jury charge does not constitute a procedural bar precluding review of Davis's claim.[1]

In a capital case, the jury must be allowed to consider a lesser included noncapital offense if the jury could rationally acquit on the capital crime and convict for the noncapital crime. *See Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Reed v. Quarterman,* 504 F.3d

---

[1] It appears that the state habeas court misconstrued at least part of Davis's argument. On direct appeal, the state appellate court considered and rejected Davis's contention of charging error based on the trial court's refusal to instruct the jury on the lesser included offenses of murder and manslaughter. *Davis*, No. 02-04-244-CR, slip op. at 15-19. The appellate court even noted that Davis was not arguing that he was entitled to an instruction on felony murder. *Davis*, No. 02-04-244-CR, slip op. at 15 n.6. It was in his application for state habeas relief that Davis first claimed he was entitled to an instruction on the offense of felony murder. Irregularities in state habeas proceedings, however, are not subject to federal court remedy. *See Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004). Moreover, Davis's complaint does not merit federal habeas relief regardless of questions about the state habeas court's decision.

465, 489 (5th Cir. 2007). But in a noncapital murder case, the failure to give an instruction on a lesser included offense does not raise a constitutional issue. *Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998). Capital murder cases in which the death penalty is not imposed are treated as noncapital cases for this purpose. *See id*. Furthermore, Davis did not request a jury instruction on the offense of felony murder and even argued that the instruction would not be appropriate. (7 Rep. R. 4-9). *Davis*, No. 02-04-244-CR, slip op. at 15 n.6. Davis cites no clearly established federal law, and the court has found none, to suggest that it was a violation of due process for the trial court not to give a lesser included offense instruction sua sponte when none was requested and in fact the defense opposed including a felony murder instruction in the charge. *Cf. Sterling v. Cockrell,* No. 3:01-CV-2280-D, 2003 WL 21488632, *12 (N.D. Tex. Apr. 23, 2003)(finding that right to jury instruction on lesser offense in capital case was not self-executing).

In his request for an evidentiary hearing, which he filed after his federal habeas petition, Davis revises his complaint to challenge the trial court's denial of defense counsel's request for an instruction on the lesser included offense of murder. Davis had requested a jury instruction on murder on the ground that he acted knowingly, not intentionally.[2] (7 Rep. R. 4-9). *Compare* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003)(defining murder as intentionally or knowingly causing death of an individual) *with id*. § 19.03(a)(2) (providing that person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit another enumerated offense). But Davis's version of events describes an accidental shooting. The state appellate court found no evidence existed from which a rational jury could find that Davis, if guilty,

---

[2] Under Texas law, a person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2003). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id*. § 6.03(a).

was guilty only of the lesser offense of murder committed knowingly. *Davis*, No. 02-04-244-CR, slip op. at 17-19. Absent a constitutional violation, the federal courts defer to a state court's interpretation of its own law in deciding whether a lesser-included-offense instruction is warranted. *Creel*, 162 F.3d at 391. Davis's complaints provide no basis for federal habeas relief.

### 3. Ineffective Assistance of Counsel

Davis asserts that he was denied the effective assistance of counsel because his attorneys, Jeff Stewart and Reagan Wynn, committed an inadequate pretrial investigation, failed to call favorable witnesses, and discouraged him from testifying. The two-pronged standard by which a claim of ineffective assistance of counsel is measured is set forth in *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984).

The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient. *Id.* at 698, 104 S.Ct. at 2064, 80 L.Ed.2d 674. The defendant must show that counsel's performance was deficient in that the errors made were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d 674. The second prong requires the defendant to show prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. at 694, 104 S.Ct. at 2068, 80 L.Ed. 2d 674. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d 674. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id*. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d 674. In addition, claims of ineffective assistance are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d 674. Therefore, the federal court cannot grant habeas relief unless

the state court's rejection of the claims involved an unreasonable application of the law to the facts. 28 U.S.C. § 2254(d)(1).

Davis complains that his attorneys did not interview two eyewitnesses, Paul Dunbar and Misty Martindale, or compel them to testify at trial. He speculates that these witnesses might have provided favorable testimony that the jury would have found more persuasive than Gentry's testimony, given Gentry's status as a felon who was motivated to assist the prosecution because he was facing prosecution in an unrelated matter. Complaints of uncalled witnesses are not favored on habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative. *See Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). Davis's case illustrates the soundness of this principle because, contrary to his complaint, counsel interviewed Dunbar and Martindale and made a reasonable strategic choice not to use them as witnesses.

In evaluating counsel's pretrial investigation and failure to subpoena Dunbar and Martindale as defense witnesses, the state court considered the evidence, including affidavits provided by Davis's defense attorneys, and made the following findings:

- Davis presented no evidence that his attorneys failed to investigate Dunbar and Martindale
- Davis presented no evidence that the testimony of Dunbar or Martindale would have been beneficial
- Dunbar presented no evidence that his attorneys should have called Dunbar or Martindale to testify
- Defense counsel reviewed the State's case file
- Defense counsel determined that Dunbar and Martindale needed to be interviewed

- Defense counsel's investigator interviewed Dunbar months before trial, and Dunbar identified Davis as the shooter
- Dunbar's information contradicted Davis's version of events
- While in jail, Dunbar submitted a request that he be released because he had witnessed a murder and the murderer (Davis) was incarcerated with him
- Defense counsel determined that Dunbar's information was not very helpful to the defense, and Davis had agreed with this assessment
- When the investigator tried to contact Dunbar near the date of trial, Dunbar could not be contacted at the addresses or telephone numbers he had provided
- The State was also unable to find Dunbar
- The investigator was unable to locate Martindale before trial, but located her after the trial started
- Stewart and the investigator interviewed Martindale, who advised that she did not see the shooting
- Martindale's information was corroborative of testimony provided by the State's key witness
- Counsel told Davis that Martindale's testimony would not be beneficial

(State Habeas R. 56-57). The state court concluded that Davis was not denied the effective assistance of counsel.

Dunbar has not produced clear and convincing evidence, or any evidence, to rebut the presumption of correctness that the federal court must afford to underlying state court findings. Given those findings, it was not unreasonable for the state court to reject Davis's complaints about counsel's pretrial investigation or the decision not to have Dunbar and Martindale testify.

Davis also asserts that he wanted to testify and explain that he and Marquez had struggled over the gun after Marquez had threatened him with a box-cutter,[3] but his attorneys persuaded him not to testify. Every criminal defendant is privileged to testify in his own defense, or to refuse to

---

[3] In his brief Davis recounts that he knew Marquez and intended to confront Marquez about a drug debt. (Pet. at 7-A, 7-C).

-11-

do so. *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). But a defendant who argues that his attorney prevented him from testifying must still satisfy the two prongs of *Strickland*. *Bower v. Quarterman*, 497 F.3d 459, 473-474 (5th Cir. 2007). There is a strong presumption that counsel's decision not to put the defendant on the stand was sound trial strategy. *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). The decision is a judgment call that should not easily be condemned with the benefit of hindsight. *Robison v. Johnson*, 151 F.3d 256, 261 (5th Cir. 1998).

Through affidavits provided to the state habeas court, Davis's attorneys stated that they initially wanted Davis to testify in support of a self-defense theory at trial because a box-cutter was found near the body, the deceased had cocaine in his system, and the eyewitness described seeing the men struggle. (State Habeas R. 44-45, 52). This theory was abandoned because Davis insisted that he was not the shooter, (State Habeas R. 44-45, 52), and at trial, the defense argued that an unknown man had shot Marquez. (State Habeas R. 50-51). The attorneys also advised Davis of his absolute right to testify, but advised him that it was not a good idea given the evidence that had been admitted. (State Habeas R. 52-53). The attorneys stated that Davis did not change his story that someone else was the shooter or indicate that he had acted in self-defense until after he had been convicted. (State Habeas R. 45, 53).

The state court found no evidence that Davis wanted to testify at trial that the shooting was in self defense, that he told his attorneys that he wanted to testify, or that his decision not to testify was coerced or made against his will. (State Habeas R. 57-58, 60). The state court found that counsel acted properly in not presenting a defense of self-defense because they did not have the evidence to support such a claim. The state court further found that Davis failed to show that such

a defense would have been successful when he had unequivocally denied shooting Marquez.[4] (State Habeas R. 60-61).

Davis relies only on self-serving assertions that he advised his attorneys that he wanted to testify and pursue a claim of self-defense. He fails to provide clear and convincing evidence to rebut the presumption of correctness afforded to the underlying state court findings, nor has he demonstrated that the state courts acted contrary to or unreasonably applied clearly established federal law in rejecting his complaints of ineffective assistance of counsel at trial.

H.      EVIDENTIARY HEARING

Davis requests an evidentiary hearing to challenge the state court's findings of fact with respect to his claims of ineffective assistance of counsel. He complains that the state court afforded him only a "paper hearing," but the absence of a live evidentiary hearing in state court does not preclude this court from deferring to the state court's factual findings.[5] *See Valdez v. Cockrell*, 274 F.3d 941, 949 (5th Cir.2001). Moreover, 28 U.S.C. § 2254 sets out prerequisites for holding an evidentiary hearing:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on–
>
> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

---

[4] Davis signed a sworn statement after the murder in which he asserted that he was not the shooter and that he saw the shooter drive away in a blue car. (State Habeas R. 47, 58).

[5] Deference is especially appropriate if, as occurred here, the same judge presided over the trial and the state habeas proceedings. (State Habeas R. 63, 65). *See Hill v. Johnson*, 210 F.3d 481, 489 (5th Cir. 2000).

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). For purposes of Section 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or his counsel. *Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 1488, 146 L.Ed.2d 435 (2000).

Davis has not established his diligence in pursuing the development of his claims in the state courts. *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000)(finding that mere request for state court evidentiary hearing is not enough to show diligence). In addition, Davis has not pointed to any new rules of constitutional law in support of his claims or identified any new factual predicate that was not previously available to him.

Even if the statutory prerequisites were met, Rule 8 of the Rules Governing Section 2254 Cases vests the district court with discretion in conducting an evidentiary hearing. *See Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). When the district court has sufficient facts before it to make an informed decision, it does not abuse its discretion in declining to hold an evidentiary hearing. *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000). Davis argues that a hearing is necessary because the federal court might disagree with the credibility determinations made by the state court, but a federal habeas court is prohibited from substituting its credibility rulings for those of the state court simply because the federal court disagrees with them. *See Guidry v. Dretke*, 397 F.3d 306, 319 (5th Cir. 2005). Davis is not entitled to an evidentiary hearing.

## RECOMMENDATION

The petition for writ of habeas corpus should be denied. The request for an evidentiary hearing should also be denied.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 12, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

# ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 12, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JULY 22, 2008.

　/s/　Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE